UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: LARI GRAHAM BOLLINGER and
PAM KAY BOLLINGER,

No. 13-10-13688 JR

Debtors.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on the Motion to Recuse Judge Robert H. Jacobvitz and Request for Hearing Date Regarding Said Recusal and or Removal From This Matter (the "Second Motion to Recuse"), filed July 13, 2011 by the Debtor Lari Graham Bollinger, *pro se*.[1] Mr. Bollinger requests a hearing on the Second Motion to Recuse.

The Second Motion to Recuse asserts that several of the Court's actions constitute grounds for recusal, including the following: 1) that by continuing to preside over this bankruptcy case the Judge Jacobvitz is attempting to influence the civil action Mr. Bollinger has filed against Judge Jacobvitz in state court; 2) that the order denying the first motion to recuse contains a reference to "judge shopping," evidencing bias; 3) that the order denying the first motion to recuse paints Mr. Bollinger in a poor light by implying that Mr. Bollinger's claims are simply an act of revenge; 4) that the Judge's actions have wrongfully deprived the Bollinger family of $14,597.00; 5) that the order conditioning the automatic stay requiring the Bollingers to make payments of $280.00 per month imposes an obligation to make payments that are not due and that are beyond Mr. Bollinger's ability to pay and were imposed by the Court "to starve the plaintiffs into a default … for a nonfunctional residential building" and to "keep the Bollinger Family in a perpetual state of Homelessness and Financial Ruin;" 6) that the Judge

---

[1] Pam Kay Bollinger did not sign the Second Motion to Recuse.

improperly seized two house payments totaling $595.00[2]; 7) that the Judge denied Mr. Bollinger's request to place a full coverage policy on his residence; 8) that the Judge has stated "he is simply a mediator;" 8) that the Judge has ignored the Debtors' "complaints of impropriety by the defendants['] attorney;" 9) that the Court has "used language of second class citizenry against the Bollinger family;" 10) that the Judge's actions have violated the Americans With Disabilities Act in view of Mr. Bollinger's wife's and the Debtors' daughter's medical conditions; 11) that the Judge is improperly attempting to destroy the Debtors' claims for damages; and 12) that the Judge's actions amount to a financial persecution of the Debtors and violate the Debtors' civil rights and the New Mexico Unfair Practices Act.

I. **BACKGROUND FACTS AND PROCEDURAL HISTORY OF THE BANKRUPTCY CASE AND ASSOCIATED ADVERSARY PROCEEDING**

Lari Graham Bollinger and Pam Kay Bollinger (together, the Bollingers, or Debtors) commenced their chapter 13 case on July 23, 2010. EverHome Mortgage Company ("EverHome") is the holder of a note dated February 6, 2006 executed by the Debtors in the principal amount of $40,000 secured by a mortgage dated February 6, 2006 on the Debtors residence located at 1610 South Globe Ave., Portales, New Mexico (the "Property" or "residence"). *Order Conditioning the Automatic Stay* (Docket No. 83).[3] The regular monthly payments due under the note and mortgage consist of principal and interest in the amount of $279.69, plus an escrow component consisting of the insurance premium for a homeowners' insurance policy and estimated property taxes. *Id*.

---

[2] The Court is not entirely clear what this allegation references, but believes it may be related to Mr. Bollinger's request to apply funds held by the Chapter 13 Trustee to the payments the Debtors are required to make to EverHome under the Order Conditioning Automatic Stay. Payments made to the Chapter 13 Trustee are held by the Chapter 13 Trustee and disbursed in accordance with the terms of a confirmed plan. The Debtors' plan has not been confirmed.

[3] On April 21, 2011, following an evidentiary hearing held April 5, 2011 on EverHome's Motion for Relief from the Automatic Stay and for Abandonment of Property to EverHome, the Court entered an Order Conditioning the Automatic Stay. That order contained findings of facts. Citations to the Order in this opinion refer to those findings.

-2-

Pre-petition, EverHome sued the Debtors in the Ninth Judicial District Court for the State of New Mexico, Roosevelt County, Case No. D-911-CV-2009-00222, to collect on the note and to foreclose the mortgage, and obtained a summary judgment and an order of foreclosure against the residence. *Id.* The Bollingers filed their Chapter 13 bankruptcy case before the State Court approved a special master's sale of their residence. *Id.*

*The Plans on File*

On the Petition Date, the Debtors filed a chapter 13 plan proposing to pay to the Chapter 13 Trustee $340.00 per month for sixty months, commencing within thirty days after the plan was filed. *Plan, Docket No. 5*. On October 13, 2010, the Debtors filed their first amended plan proposing to pay $60.00 per month to the Trustee for the first three months commencing within thirty days after the original plan was filed, and then a total of $345.00 per month thereafter for 57 months. *Amended Plan, Docket No. 23*. On December 1, 2010, the Debtors filed their second amended plan proposing to pay $60.00 per month to the Trustee for the first month commencing within thirty days after the original plan was filed, and $595.25 per month thereafter for 60 months. *Second Amended Plan, Docket No. 43*. On January 19, 2011, the Debtors filed their third amended plan proposing to pay $595.25 per month to the Trustee for the first month commencing within thirty days after the original plan was filed, and $595.25 per month thereafter for 59 months. *Third Amended Plan, Docket No. 54*. The proposed payment under the Third Amended Plan includes payment of $287.85 per month for the benefit of EverHome to cure prepetition mortgage arrearages. *Third Amended Plan, ¶ 5a, Docket No. 54*. The Trustee's Report of Receipts and Disbursements filed November 16, 2010 reflects that the Debtors had paid the Trustee a total of $525.00 as of November 16, 2010. *Docket No. 36*. The Debtors contend they have paid the Trustee $595.00. Post-petition, the Debtors made two payments to

EverHome: 1) a payment of $280.00; and 2) a payment of $20.00. *Order Conditioning the Automatic Stay (Docket No. 83)*. EverHome credited these payments to fees and to the escrow account. *Id*. The Debtors have made no further post-petition payments to EverHome. *Id*.

*Motion to Dismiss, For Change of Venue and to Reassign the Chapter 13 Trustee.*

On November 3, 2010, the Debtors filed a motion to dismiss their chapter 13 case, for a change of venue, and to reassign the chapter 13 trustee. *Motion, Docket No. 31*. The Debtors complained about conduct of a representative of the Chapter 13 Trustee at the Section 341(a) creditors meeting. *Id*. At a hearing held November 16, 2010, the Court ruled that, by the mutual agreement of the Debtors, the Chapter 13 Trustee and the Trustee's representative in question, the Trustee's representative would have no further involvement in this chapter 13 case. *Order, Docket No. 39*.

*The Dispute Relating to Insurance and the First Fire*

The Bollingers' residence was covered by a homeowners' insurance policy issued by The Hartford Insurance Company (the "Hartford Policy"). *Order Conditioning the Automatic Stay (Docket No. 83)*. The Hartford Policy was renewed in late 2009 for a renewal period effective February 6, 2010 to February 6, 2011. *Id*. During the course of the bankruptcy case, the Debtors insisted that the Hartford Policy had been cancelled, yet EverHome, through its attorneys of record, represented to the Court and to the Debtors that the Debtors were mistaken, that the homeowners' insurance coverage under the Hartford Policy remained in force, that it paid the insurance premium for the Hartford Policy through February 6, 2011, and that the Hartford Policy had not been cancelled. *Id*. Based on these representations by EverHome, on December 22, 2010 the Court entered an Order Resulting from Status Conference on EverHome Mortgage Company's Motion

-4-

for Relief from Stay ("Order Regarding Insurance"). *Id*. The Order Regarding Insurance provided, in part, that

> based on EverHome's representations and the Debtors' reliance on those representations, that EverHome will be financially responsible for any losses or other triggering event that would have been covered by the homeowners insurance had it not been cancelled, in the event that the coverage has been terminated, until such time as coverage is reinstated through at least February 6, 2011.
>
> *Docket No. 51*.

The purpose of that order was to make it unnecessary for the Debtors to obtain homeowners insurance coverage until February 7, 2011 when The Hartford Policy would have expired by its own terms, thereby avoiding the possibility of the Debtors using their limited funds to pay for duplicative insurance coverage.

A letter from The Hartford Insurance Company to EverHome, dated December 27, 2010, admitted in evidence at a hearing on April 5, 2011, reflects that coverage under The Hartford Policy ended as of September 23, 2010. *Order Conditioning the Automatic Stay (Docket No. 83)*. EverHome purchased lender-placed insurance on the Property from American Security Insurance Company ("Lender Policy"). *Id.* A copy of the Additional Insured Endorsement from the Lender Policy reflects a policy date of February 20, 2011, with an effective date of September 23, 2010 and an expiration date of September 23, 2011. *Id.* There is no evidence before the Court of any other insurance policy in effect covering the Debtors' residence after September 23, 2010. *Id.* The Lender Policy has a policy limit of $138,000, and covers only buildings and structures. *Id*.

On or about February 4, 2011, the plumbing pipes in the Debtors' residence froze, burst, and caused damage to the property. *Docket No. 83*. Subsequent to the freeze, the

-5-

Property was damaged by fire. *Id.* Mr. Bollinger has testified that the damage included a substantial loss of personal property located within his residence. As of the date of the final hearing on EverHome's Motion for Relief from Stay, the Property had not been inspected by an insurance adjuster. *Id.* EverHome received a letter from an insurance adjuster for American Surety Insurance Company, dated February 28, 2011, stating the adjuster had not yet been given access to the residence. *See* the letters attached to the Notice filed March 30, 2011 as Docket No. 79, admitted in evidence at a hearing held April 5, 2011.

*Continuances of Preliminary Hearings on Confirmation of the Chapter 13 Plan*

On February 10, 2011, Mr. Bollinger filed a motion explaining that storm and fire damage had occurred to his residence. *Motion, Docket No. 57.* By the Motion, Mr. Bollinger sought a stay of proceedings in his chapter 13 case until the extent of the damage could be determined. *Id.* At a preliminary hearing held February 15, 2011 on confirmation of the Debtors' chapter 13 plan, at which Mr. Bollinger appeared by telephone, the Court continued the preliminary hearing on confirmation until March 15, 2011. *Order, Docket No. 60.* On February 25, 2011, the Trustee filed a Motion to Dismiss the chapter 13 case, alleging that the Debtors were in arrears on required payments to the Trustee in the amount of approximately $3,046.50 as of the date of the motion. *Motion to Dismiss, Docket No. 61.* At the continued preliminary hearing on confirmation held March 15, 2011, the Court further continued the hearing until April 19, 2011 so the continued hearing would be held after a scheduled final hearing on EverHome's motion for relief from stay set for April 5, 2011. *See Docket Nos. 67, 68 and 69.*

-6-

In light of the fact that the Court did not grant EverHome's motion for relief from stay (*see Order Conditioning Automatic Stay (Docket No. 83)* and below), and there being a pending claim under the insurance policy, the Court further continued the preliminary confirmation hearing. *See Order Resulting from Preliminary Confirmation Hearing [held April 19, 2011] and Preliminary Hearing on the Trustee's Motion to Dismiss (Docket No. 86)*. On May 12, 2011, EverHome filed a notice that an adjuster for American Security Insurance Company had assessed the fire damage to the residence and had issued two checks totaling $14,597.43 to cover the damage pending an assessment of the actual cost of repairs. *See Notice of Insurance Claim Proceeds, Adjuster's Report and Explaination [sic.] of Payment,(Docket No. 88)*. The checks were made jointly payable to EverHome and the Bollingers.

At the continued preliminary confirmation hearing held May 20, 2011, the Court: 1) set a final hearing on confirmation of the plan for August 17, 2011; 2) fixed a deadline of June 17, 2011 for the Debtors to further amend their plan and serve the associated notice; and 3) at Mr. Bollinger's request, ordered the Trustee to give him an accounting of funds received from the Debtors. *See Order Resulting from Continued Preliminary Confirmation Hearing (Docket No. 114)*. The Court fixed a deadline for a further amendment of the plan so the Debtors could amend their plan based on post-petition events.

*EverHome's Motion for Relief From Stay*

On October 15, 2010, EverHome filed a Motion for Relief From Stay. *See Docket No. 21*. On December 10, 2010, the Court held a preliminary hearing on the motion and set it for final hearing on January 5, 2011. *See Docket No. 46*. On December 22, 2010, the Court held a

-7-

status conference on the motion for relief from stay and reset the final hearing for January 21, 2011. *See Order Resulting from Status Conference on EverHome Mortgage Company's Motion for Relief from Stay (Docket No. 51)*. At the hearing on January 21, 2011, the hearing on the motion for relief from stay was continued until March 10, 2011. *See Docket Entry No. 52*. On February 10, 2011, the Debtors filed a motion to continue the March 10, 2011 final hearing on the motion for relief from stay because a fired had occurred at the residence. *See Docket No. 57*. The Court vacated the March 10, 2011 final hearing and instead held a preliminary hearing on that date. *See Docket No. 66*. At the preliminary hearing on March 10, 2011, the Court set a final hearing on EverHome's motion for relief from stay on April 5, 2011. *See Docket No. 67*.

The Court held a final evidentiary hearing on the Motion for Relief From Stay on April 5, 2011. EverHome sought relief from stay to complete the foreclosure of its mortgage against the residence. On April 12, 2011, the Court entered an Order Conditioning Automatic Stay. *Order, Docket No. 83*. The Order Automatic Conditioning Stay denied the relief sought by EverHome, but conditioned continuation of the stay on the Debtors making monthly payments to EverHome in the amount of $279.69, representing principal and interest due under the note and mortgage in question, with the first such payment due on or before May 1, 2011. *Id*. The Court did not require the Debtors to pay EverHome for the insurance and tax escrow required by the mortgage, or to bring current, as a condition to continuance of the stay, any of the unpaid monthly payments that had accrued under the note and mortgage prior to May 1, 2011. *Id*. The Order Conditioning Automatic Stay included a provision for a 14-day notice and cure right if a payment was not made timely. *Id*. The order also required the Debtors to provide access to the residence for inspection by an insurance adjuster for American Security Insurance Company so the adjuster could assess the fire damage and process an insurance claim for the damage. *Id.*

-8-

*The Insurance Monies and the Second Fire*

On May 20, 2011, Mr. Bollinger filed a Demand for Insurance Monies paid on or about May 12, 2011. EverHome filed a response on May 25, 2011 and Mr. Bollinger filed a reply on May 31, 2011. *Docket Nos. 109, 115 and 121*. Mr. Bollinger had obtained a bid in the amount of $8,000 plus tax for electrical repairs to the residence. (*See* the bid attached to the Demand for Insurance Monies). EverHome objected to use of $8,000 of the $14,597.43 of insurance proceeds to make electrical repairs on the grounds that the bid was to repair only a portion of the damage and EverHome should be afforded the opportunity to assess the damage; EverHome also requested permission to have its own contractor assess all of the damage. *Response, Docket No. 115*.

At a hearing held June 3, 2011, the Court fixed deadlines for Mr. Bollinger to make diligent effort to obtain bids for the repairs to the home not included in the bid by the electrical contractor, and for EverHome to have a contractor obtained by it make a bid to repair the damage, and directed that the insurance monies be deposited in the Court registry pending further order of the Court. *Order, Docket 127*. On June 9, 2011, EverHome filed a notice that it was denied access to Mr. Bollinger's residence to have an electrical contractor make a bid on the electrical repairs. *Notice*, *Docket No. 132*. At a hearing held before Judge Starzynski on June 13, 2011, the Court extended the time for EverHome to have the residence inspected by electrical and general contractors. *Order*, *Docket No. 137*. EverHome thereafter had the property inspected by a general contractor, and filed a supplemental objection setting forth that bid. *Supplemental Objection filed June 15, 2011*, *Docket No. 138*. Mr. Bollinger did not submit a bid to repair all of the damage to the residence.

-9-

Case 10-13688-j7    Doc 187    Filed 08/01/11    Entered 08/01/11 13:46:40 Page 9 of 19

The Court held a further hearing on the Demand for Insurance Monies on June 21, 2011 on the request of Mr. Bollinger who asserted in part that the contractor EverHome retained to inspect the residence was not properly licensed in New Mexico. *Request for Status Conference*, *Docket No. 140*. At the hearing EverHome acknowledged the contractor it retained was not licensed in New Mexico, represented that EverHome was ignorant of that fact and was dismayed to learn of the problem, and requested a further opportunity for an inspection of the residence by a licensed contractor. The Court gave EverHome a further opportunity to obtain an assessment of the damage from an electrical and general contractor. *See Docket No. 143*. EverHome had argued, in part, that it should be permitted a further opportunity to obtain an assessment of the damage from a general contractor because the only bid before the Court was for electrical repairs only. The Court set a final evidentiary hearing for July 8, 2011 to consider 1) the nature and extent of damage to the residence; 2) the cost to repair the damage; 3) the retention of one or more contractors to effectuate repairs; and 4) the use of the insurance proceeds on deposit in the Court registry. *Order*, *Docket No. 143*. The Court further ordered that the Debtors make the residence available for inspection prior to the hearing by a licensed and bonded contractor referred by EverHome. *Id.*

On July 7, 2011, EverHome filed an emergency motion to continue the hearing on the Demand for Insurance Monies set for July 8, 2011. The Court held an evidentiary hearing on July 8, 2011 at which the Court first considered the motion for continuance. Based on testimony from a contractor retained by EverHome regarding his unsuccessful repeated efforts to make contact with Mr. Bollinger to gain access to the residence for an inspection prior to the July 8, 2011 hearing, the Court continued the final hearing on the

-10-

Demand for Insurance Monies until July 14, 2011, and fixed a time on July 12, 2011 for the inspection of the residence by electrical and general contractors retained by EverHome.  *Order, Docket No. 161*.

On July 13, 2011, Mr. Bollinger filed a motion to continue the July 14, 2011 final hearing on the Demand for Insurance Monies.  *Motion*, *Docket No. 168*.  Mr. Bollinger alleged that EverHome failed to have his residence inspected by a contractor on July 12, 2011 in violation of this Court's order.  *Id.*  The Court held a hearing on July 13, 2011 on Mr. Bollinger's motion for a continuance.  At the hearing, Mr. Bollinger withdrew his request for a continuance after EverHome asserted that a contractor and neighbor would testify that the inspection took place, and that the contractor would proffer photos in evidence taken during the inspection.  *Order*, *Docket No. 172*.  The Court denied the motion for continuance.  *Id*.  The Court also ruled, at Mr. Bollinger's request and without objection from EverHome, that Mr. Bollinger could appear and testify by telephone at the July 14, 2011 final hearing.  *Id*.

An evidentiary hearing was held on July 14, 2011 on the Demand for Insurance Monies, and on a request by EverHome to modify the stay to permit it to complete its foreclosure action in state court based on an alleged failure by the Debtors to make payments pursuant to the Order Condition Automatic Stay entered April 12, 2011.  At the hearing the evidence established that a further fire at the residence occurred on or about July 12, 2011 before the general and electrical contractors retained by EverHome arrived to inspect the residence, and that the fire resulted in damage to the home so extensive that it is no longer economically feasible to repair the structure.  At the conclusion of the hearing, the Court took the matters before it under advisement.

-11-

Case 10-13688-j7    Doc 187    Filed 08/01/11    Entered 08/01/11 13:46:40 Page 11 of 19

*The Debtors' Claim Against EverHome*.

On May 17, 2011, the Debtors filed a Demand for Treble Damages Due by EverHome Mortgage Company. *Demand*, *Docket No. 92*. On May 24, 2011, the Court entered an order denying the Demand for Treble Damages without prejudice on the ground that the relief sought requires commencement of an adversary proceeding. *Order*, *Docket No. 111*. On June 9, 2011, the Debtors filed a complaint to commence Adversary Proceeding No. 11-1100 seeking damages against EverHome. The adversary proceeding is pending.

*The Injunction Proceeding*

On May 13, 2011, EverHome filed a complaint for injunctive relief to commence Adversary Proceeding No. 11-1083. Following an evidentiary hearing, the Court entered a permanent injunction enjoining Mr. Bollinger from, among other things and subject to certain exceptions or limitations, contacting EverHome or its representatives other than in writing or coming within 500 yards of any employee or representative of EverHome or any member of their immediate families. *Injunction*, *Adversary Proceeding No. 10-1083, Docket No. 8*.

*Motion for Sanctions Against EverHome's Counsel*

On May 17, 2011, the Debtors filed a Motion to Fin[e,] Remove Counsel and Demand for Sanctions seeking removal of counsel for EverHome from the case and sanctions. *Docket No. 94*. The Motion was based on the conduct of counsel before this Court. *Id.* On May 24, 2011, the Court entered an order denying the Motion. Docket No. 112. At a hearing held May 20, 2011 the Court ruled that the conduct of EverHome's counsel before the Court did not warrant the imposition of sanctions.

-12-

Case 10-13688-j7    Doc 187    Filed 08/01/11    Entered 08/01/11 13:46:40 Page 12 of 19

*The Final Hearing on Confirmation of the Debtors' Chapter 13 Plan
and on the Trustee's Motion to Dismiss.*

A final hearing on confirmation of the Debtors' third amended chapter 13 plan is set for August 17, 2011. On July 13, 2011, Mr. Bollinger filed a motion to extend the time for his filing an amended plan. *Motion*, Docket No. 176. The Court previously fixed a deadline for the Debtors to file a further amended chapter 13 plan (*See* Docket No. 114), and extended that deadline twice at Mr. Bollinger's request (*See* Docket Nos. 127 and 143), to give the Debtors an opportunity to further amend their plan based on post-petition events. Based on Mr. Bollinger's statement at the hearing held July 14, 2011 that he does not wish to amend his chapter 13 plan further, and that he wishes to seek confirmation of the Third Amended Plan filed January 19, 2011, the Court ordered that the Debtors are not required to file a further amended plan and denied the motion to extend. *Order, Docket No. 176*. The final hearing on confirmation of the Debtors' chapter 13 plan set for August 17, 2011 is a hearing to consider confirmation of the Third Amended Plan filed January 19, 2011. A final hearing on the Trustee's Motion to Dismiss filed February 25, 2011 is set at the same time. *See Docket Nos. 114 and 180.*

II.    **DISCUSSION**

Pursuant to Rule 5004(a), Fed.R.Bankr.P., disqualification of a bankruptcy judge is governed by 28 U.S.C. §455.[4] Section 455 of Title 28 provides, in relevant part, that "[a]ny . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455. Recusal is warranted pursuant to 28 U.S.C. §455 where "a reasonable person, knowing all the relevant facts, would harbor

---

[4] Rule 5004(a) provides:
    A bankruptcy judge shall be governed by 28 U.S.C. §455, and disqualified from presiding over a proceeding or contested matter in which the disqualifying circumstance arises or, if appropriate, shall be disqualified from presiding over the case.

    Rule 5004(a), Fed.R.Bankr.P.

doubts about the judge's impartiality." *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987)(citations omitted). "[R]ecusal is necessary if there is evidence of actual bias. . ." *Frates v. Weinshienk,* 882 F.2d 1502, 1504 (10th Cir. 1989).

However, unless it can be shown that there is pervasive bias against a party, the alleged bias must be based on extra-judicial conduct. *Gokey v. McIntosh (In re McIntosh),* 137 B.R. 967, 970 (D.Colo. 1992) (citing *United States v. Page,* 828 F.2d 1476, 1481 (10th Cir. 1987)). "Consistent adverse rulings, without more, is not a reason for recusal . . ." *Id.* (citation omitted). "'A judge should not recuse . . . on unsupported, irrational, or highly tenuous speculation.'" *Hinman v. Rogers,* 831 F.2d at 939. In addition, "'[t]here is as much obligation for a judge not to recuse when there is no occasion . . . to do so as there is . . . to [recuse] when there is.'" *In re American Ready Mix, Inc.,* 14 F.3d 1497, 1501 (10th Cir. 1994) (quoting *Hinman v. Rogers,* 831 at 938).

*Allegations pertaining to first Order Denying Motion for Recusal*

Debtors assert that "Judge Jacobvitz refused to remove himself" from their bankruptcy case in order to influence the civil action filed in state court. Debtors further assert that the Court accuses them of "'judge shopping' to get a preferred decision in this matter" and that the Order "paints them [Debtors] in a poor light." *See Motion, Docket No. 170.* Debtors mischaracterize the language of the Order Denying Debtors' Motion to Recuse Presiding Judge (Docket No. 151). The Court's Order Denying Debtors' Motion to Recuse recites facts and contains citations supporting the Court's denial of the first recusal motion. *Order, Docket No.151.* The Order notes that the Debtors' first motion to recuse asserts as a ground for recusal that the Debtors intended to file civil litigation against Judge Jacobvitz. *Id.* The Court cited *United States v. Grismore,* 564 F.2d 929 (10th Cir. 1977) which provides that " [a] judge is not disqualified

-14-

merely because a litigant sues or threatens to sue him." *Grismore,* 564 F.2d at 933. While the Court did not state that Debtors were "judge shopping", the Court cited *United States v. Cooley,* 1 F.3d 985, 993 (10th Cir. 1993) for the proposition that "[t]he [recusal] statute is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice." *Cooley,* 1 F.3d at 993. The tenor of the first Motion to Recuse (Docket No.170) indicates that the Debtors are dissatisfied with rulings of this Court. A recusal based on a litigant's dissatisfaction with the Court's rulings creates the potential for litigants to file motions to recuse to obtain a different judge who might rule differently. Finally, it does not appear to this Court that language contained in the Order (Docket No. 151) "paints" Mr. Bollinger in a "poor light." In any event, as cited in the previous Order (Docket No. 151), "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases ordinarily do not support a bias or partiality challenge." *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

*Allegations of Financial Distress Caused by the Court*

The Debtors allege that Judge Jacobvitz's decisions have wrongfully deprived them of insurance monies, wrongfully required them to make payments as a condition to continuance of the automatic stay, and wrongfully deprived them of use of funds held by the Chapter 13 Trustee, for the purpose of keeping them homeless and creating financial hardship on them, in violation of their civil rights, the American's With Disability Act, and the New Mexico Unfair Trade Practices Act. This Court's decisions are motivated by its duty decide disputes in a fair and impartial manner, to exercise sound discretion, and to apply the law. The Debtors' dissatisfaction with the Court's rulings is insufficient grounds for recusal.

*Allegations of Grounds for Recusal That are Factually Untrue*

Debtors allege that they were denied a request to obtain a full coverage insurance policy for their residence. Debtors misconstrue the Court's findings and rulings in this case. On December 22, 2010, the Court entered the Order Resulting from Status Conference on EverHome Mortgage Company's Motion for Relief From Stay (Docket No. 51). At the status conference, EverHome's counsel represented to the Court and the Debtors that the homeowner's insurance coverage was in force and there was coverage through February 6, 2011. The Order (Docket No. 51) made the following finding:

> Based on these representations, no action is being taken by the Debtors to procure homeowners insurance. The Court has determined, based on Everhome's representations and the Debtors' reliance on those representations, that Everhome will be financially responsible for any losses or other triggering event that would have been covered by the homeowners insurance had it not been cancelled, in the event that the coverage has been terminated, until such time as coverage is reinstated through at least February 6, 2011. The Court makes no determination as to whether the coverage was cancelled.

*Docket No. 51.*

The Court did not deny the Debtors the opportunity to obtain their own insurance coverage if they wished to do so. *Id.*

*July 8th Hearing*

Debtors assert that Judge Jacobvitz at a hearing held July 8, 2011 has stated "he is simply a mediator," and that he has refused to appoint a mediator in this case. Debtors have misunderstood the Court. At the hearing Judge Jacobvitz does not refer to himself as a "mediator." The record reflects that after Mr. Bollinger made a settlement offer directed to the Court, Judge Jacobvitz informed the parties at the hearing that "the Court presides over the dispute and resolves disputes between parties…the Court can only approve or disapprove agreements reached between the parties." *See Record of Hearing, July 8, 2011*.

-16-

*Other Issues*

Debtors' assertion that the Judge is improperly attempting to destroy the Debtors' claims for damages is without merit. Debtors filed a Demand for Treble Damages Due Debtors by Everhome Mortgage Company (Docket No. 92) seeking damages against EverHome for losses incurred after the end of coverage under a homeowner's insurance policy issued for Debtors' residence. On May 24, 2011, the Court entered its Order Denying, Without Prejudice, Debtors' Demand for Treble Damages Due Debtors by Everhome Mortgage Company (Docket No. 111). The Order specifically stated that the relief requested by the Debtors' Motion (Docket No. 92) requires Debtors to file an adversary processing. *See* Rule 7001, Fed.R.Bankr.P. On June 6, 2011, Mr. Bollinger filed an Adversary Complaint against EverHome Mortgage Company. *See Complaint, Docket No. 135*. The adversary proceeding is pending. Mr. Bollinger was not required to pay a filing fee to commence the adversary proceeding. By filing the adversary proceeding, Mr. Bollinger may pursue his claims for damages.

The Debtors also allege that "[Judge Jacobvitz] ignored the plaintiffs' complaints of impropriety by the defendant's attorney, Tim Murphy, for improperly cancelling a viable Hazard Insurance policy." The Court considered the Debtors' complaints asserted in their Motion filed May 17, 2011 (Docket No.94) seeking removal, fine or sanction of Mr. Murphy at the hearing held May 20, 2011. The Court made findings at the hearing and entered its Order Denying Motion for Sanctions (Docket No. 112) on May 24, 2011.

*The Debtors' Request for Hearing*

The Debtors' Second Motion to Recuse contains a request for a hearing on the motion. *Second Motion to Recuse, Docket No. 170*. A similar request was made in *Lieb v. Tillman (In re Lieb)*, 112 B.R. 830 (Bankr.W.D.Tex.1990). There the Court held:

-17-

> A motion for disqualification does not confer upon Defendants a right to make a record in open court nor does it confer upon them a right to an evidentiary hearing. Defendants have provided nothing to suggest a need for an open court proceeding. Their position can be adequately presented through pleadings and affidavits.
>
> *Lieb,* 112 B.R. at 835 (citing 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3550, at 629). *Accord 3 C Cattle Company v. Kelly*, 2009 WL 927749, *3 (M.D. Ga. Mar. 27, 2009)(quoting *Lieb* with approval); *In re Wolverine Proctor & Schwartz, LLC*, 397 B.R. 179, 186 (Bankr.D.Mass 2008)(same).

Here, Mr. Bollinger has filed a four-page single-spaced motion setting out in detail the factual basis for his request for recusal. Taking into account the alleged grounds for recusal, and the detailed recitation in the Second Motion to Recuse of the factual basis for the request for recusal, the Court finds that Mr. Bollinger's position has been adequately presented in his Second Motion to Recuse. The Court, therefore, denies the Debtors' request for a hearing.

### CONCLUSION

None of the allegations addressed above evidence a pervasive bias. Further, the Debtors have not pointed to some extra-judicial source of the Court's alleged bias to sustain their request for recusal. An "extra-judicial source" means that a judge has issued an "'opinion on the merits on some basis other than what the judge learned from his participation in the case.'" *Liteky v. United States,* 510 U.S. at 545 n.1, 114 S.Ct. 1147 (quoting *United States v. Grinnell Corp.,* 384 U.S. 563, 585, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)(citing *Berger v. United States,* 255 U.S. 22, 31, 41 S.Ct. 230, 232, 65 L.Ed. 481 (1921)).

The Court therefore finds and concludes that it is obligated *not* to recuse itself.

WHEREFORE, IT IS HEREBY ORDERED that the Motion is DENIED.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket:   August 1, 2011

COPY TO:

| | |
|---|---|
| Lari Graham Bollinger<br>1610 South Globe Avenue<br>Portales, NM 88130 | United States Trustee<br>PO Box 608<br>Albuquerque, NM 87103 |
| Pam Kay Bollinger<br>1610 South Globe Avenue<br>Portales, NM  88130 | |